# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MARC VALENTINO BARRERA,

      Defendant-Appellant.

UNPUBLISHED
January 8, 2019

No. 338762
Isabella Circuit Court
LC No. 2016-002389-FH

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), second or subsequent offense, MCL 333.7413(2), and one count of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), second or subsequent offense, MCL 333.7413(2). The trial court sentenced defendant to serve 57 months to 40 years' imprisonment for possession with intent to deliver less than 50 grams of cocaine conviction, and four to eight years' imprisonment for possession with intent to deliver marijuana conviction. We reverse and vacate defendant's convictions and sentences.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 21, 2016, at approximately 1:00 a.m., Sergeant Cary Murch was on patrol near the residence of 1409 Granger Street. Police were familiar with this particular residence as a "known drug house," and police had responded to many complaints and disturbances over the years with various tenants. About a week prior, in fact, Murch had gone to this house in response to an altercation and, while there, discovered a person with outstanding warrants and a "terrible drug problem." On the night in question, Murch saw that there was a car parked in the driveway of this house. He ran the license plate and found that the car's owner had no driver's license. Murch parked a couple of blocks away and waited to see if the car would leave. When the car did, he pursued it and subsequently pulled the car over for speeding. Another officer, Jeff Thompson, arrived at the scene about 10 minutes later.

The car had four occupants: Juaquin Garcia, the driver; Edison Pelcher, the front seat passenger; Morgan Guerrero, a backseat passenger; and defendant, also a backseat passenger. This particular car was known to police because police had pulled it over on multiple prior

occasions. On at least two such occasions, police found drugs in the car. Moreover, on these two occasions, Pelcher had been a passenger in the car. Additionally, Thompson had previously pulled over this car in the same neighborhood. After the traffic stop had ended, he learned that a passenger in the car had been an absconding parolee.

Defendant refused to identify himself to Thompson or Murch, and no one else seemed to know his last name; everyone knew him only as "Marc." Additionally, Guerrero lied about her name and, when her correct name was put into the police database, it was found that she had three outstanding warrants for her arrest. Furthermore, Garcia, the driver, had no license. Both Garcia and Guerrero were arrested. Murch grew concerned that defendant could be the owner of the car and, if so, was committing a crime by allowing someone without a license to operate his vehicle.

Suspicious that criminal activity was afoot, Thompson asked defendant to leave the car and executed a patdown of defendant. Thompson felt a bulge in defendant's pocket and, upon removing it, found 11 plastic sandwich baggies and more than $1,000 in cash. When asked where this money had come from, defendant stated that it was "per cap from the Tribe," leading Thompson and Murch to believe that defendant could be a tribal member. However, Tribal Officer Dave Feger arrived sometime later and did not recognize defendant as a tribal member.

Thompson and Murch decided to take defendant to the jail for fingerprinting and identification. They did not formally arrest defendant. Upon arrival, a jail corrections officer patted defendant down. During this patdown, Thompson noticed a name tattooed on defendant's arm, which turned out to be defendant's own name. When entered into the database, it was discovered that defendant was a parole absconder and had a warrant for his arrest. Police formally arrested defendant, strip searched him, and found a bag of marijuana and cocaine located in between defendant's legs. The drugs were packaged in small, individual baggies.

Prior to trial, defendant sought to suppress the evidence of the drugs discovered during the strip search as a violation of his Fourth Amendment rights. The trial court disagreed and denied his motion to suppress.

## II. ANALYSIS

Defendant presents two issues for appeal. First, defendant argues that the trial court erred by denying his motion to suppress. Second, defendant contends that the trial court erred by admitting drug profile testimony by officers Thompson and Murch, or, in the alternative, defendant maintains that his counsel was ineffective for failing to object to such testimony. Because we find defendant is entitled to the relief sought on his Fourth Amendment claims, we need not address the second issue raised by defendant on appeal.

## A. STANDARD OF REVIEW

This Court reviews constitutional questions de novo. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). Additionally, this Court reviews a trial court's decision regarding a motion to suppress de novo. *People v Williams*, 240 Mich App 316, 319; 614 NW2d 647

(2000). However, this Court reviews a trial court's factual findings regarding a motion to suppress for clear error. *People v Williams*, 240 Mich App 316, 319; 614 NW2d 647 (2000).

## B. DISCUSSION

We conclude that the trial court erred by denying defendant's motion to suppress. Although we acknowledge that the sequence of events leading up to defendant's arrest are concerning, our conclusion ultimately rests on the basis that Thompson did not have the required probable cause to detain defendant and transport him to jail to be fingerprinted.

### 1. NO PROBABLE CAUSE TO ARREST DEFENDANT

The Fourth Amendment and Michigan Constitution protect against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Earl*, 297 Mich App 104, 107; 822 NW2d 271 (2012), aff'd on other grounds 495 Mich 33 (2014). If police exert physical force, however slight, then an arrest has occurred. *California v Hodari D.*, 499 US 621, 625-626; 111 S Ct 1547; 113 L Ed 2d 690 (1991). Furthermore, "transportation to and investigative detention at [a] station house without probable cause or judicial authorization together violate the Fourth Amendment." *Hayes v Florida*, 470 US 811, 815; 105 S Ct 1643; 84 L Ed 2d 705 (1985). "[I]n the absence of probable cause or a warrant[,] investigative detentions at the police station for fingerprinting purposes [can]not be squared with the Fourth Amendment." *Id*. Reasonable suspicion on its own is generally insufficient. See *id*.

> And our view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause. [*Id*. at 816.]

Probable cause to arrest exists when the circumstances "at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony." *People v Nguyen*, 305 Mich App 740, 751-752; 854 NW2d 223 (2014) (quotation marks and citation omitted). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity," and circumstantial evidence can be sufficient to show probable cause. *Id*. at 752 (quotation marks and citation omitted).

Based on the totality of the circumstances before him at the time, Thompson conducted a patdown of defendant. During that patdown, Thompson came upon "a bulge" in defendant's pocket. Presumably operating under the assumption that he could legally remove the bulge from defendant's pocket, Thompson did so, and seized empty plastic sandwich baggies and $1,000. Even if we were to conclude that Thompson's seizure of the baggies and cash was legal, we cannot conclude that Thompson had probable cause to further detain defendant and transport him to jail for fingerprinting.

By transporting defendant from the traffic stop to the jail, Thompson arrested defendant. See *Hayes*, 470 US at 816. As noted, the facts did not support a finding of probable cause to arrest. It was undisputed that no drugs or drug paraphernalia were found on defendant's person or in the vehicle. The only items located on defendant's person were the plastic baggies and the cash. Neither of these items was contraband or directly incriminating. Furthermore, none of the vehicle occupants' criminal activities implicated defendant. Finally, the fact that defendant may have lied or misrepresented that he was a tribal member did not directly speak to whether he may have been engaged in illegal activity.

Taken together, the circumstances surrounding defendant's arrest did not give rise to probable cause. Although Thompson and Murch were undoubtedly suspicious of the large number of baggies, the cash, the lies told, and other criminal activities, such suspicions would not "justify a fair-minded person of average intelligence in believing that the suspected person [i.e., defendant] had committed a felony." *Nguyen*, 305 Mich at 751-752.

## 2. EXCLUSIONARY RULE: FRUIT OF THE POISONOUS TREE

The fruit of the poisonous tree doctrine is a subset of the exclusionary rule. See *People v Stevens*, 460 Mich 626, 633-634; 597 NW2d 53 (1999). Under this doctrine, "evidence of materials and testimony that are the products or indirect results of an illegal search" are inadmissible. *Id*. at 634. Because the cocaine and marijuana were discovered in defendant's possession only as a result of the unlawful arrest, this evidence should have been suppressed.

The prosecution contends that the inevitable discovery rule applies. We disagree. "The inevitable discovery doctrine . . . permits the admission of evidence obtained in violation of the Fourth Amendment if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner." *People v Hyde*, 285 Mich App 428, 439-440; 775 NW2d 833 (2009). In this case, there was no probable cause to arrest defendant. The discovery of the drugs came about only because of the illegal detention of defendant.

The prosecution additionally argues that defendant's status as a parolee supports an argument for inevitable discovery. The prosecution maintains that if Thompson and Murch had known defendant was a parolee, they would have been able to search him because of the diminished expectation of privacy for parolees. The prosecution cites Mich Admin Code, R 791.7735, which permits a warrantless search of a parolee pursuant to MCL 791.239. It is true that parolees can possess a diminished expectation of privacy and less protection under the Fourth Amendment. See *Samson v California*, 547 US 843, 847; 126 S Ct 2193; 165 L Ed 2d 250 (2006). However, although the Michigan administrative regulation cited by the prosecution, Rule 791.7735, lists parole officers *and* peace officers as being able to arrest and detain paroled prisoners without a warrant, they can do so only when there are "reasonable grounds *to believe* that the prisoner *has violated parole* or *a warrant has been issued* for his or her return under section 38." MCL 791.239 (emphasis added).

In this case, Thompson and Murch were not parole agents; nor were they accompanied by a parole agent. Therefore, Rule 791.7735 is arguably inapplicable. Furthermore, they did not *know* that defendant was a parolee and had warrants for his arrest until *after* the defendant was

transported to jail. Therefore, they could not have had reasonable grounds to believe that defendant had violated parole or had a warrant for his return. MCL 791.239 is, therefore, also inapplicable.

### III. CONCLUSION

Because there was no probable cause to arrest defendant, the marijuana and cocaine discovered in defendant's possession should have been excluded from evidence as "fruit of the poisonous tree," and defendant's motion to suppress granted. Without this evidence, there was no basis for the drug charges.

We reverse and vacate defendant's convictions and sentences.

/s/ Kathleen Jansen
/s/ Michael F. Gadola